United States District Court
Southern District of Texas
**ENTERED**
May 16, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALVARO PRETEL GOMEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:23-CV-00032 |
| | § | |
| CHARLEY VALDEZ, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alvaro Pretel Gomez, appearing *pro se*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. On March 20, 2023, the Court received Plaintiff's payment of the $402.00 filing fee. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff asserts as his sole claim that his equal protection rights under the Fourteenth Amendment have been violated. For the reasons set forth below, the undersigned recommends that Plaintiff's § 1983 equal protection claim against Program Supervisor Charley Valdez in his individual capacity be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's § 1983 action.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff sues Charley Valdez, the Program Supervisor III of the TDCJ Classifications and Records Office ("Supervisor Valdez"), in his individual capacity. (Doc. No. 1, p. 2.) Plaintiff claims that his Fourteenth Amendment equal protection rights were violated by Supervisor Valdez's alleged failure to apply accrued good-conduct time credits to Plaintiff's parole eligibility date in the same manner as Supervisor Valdez has done for inmates serving two-year sentences for second-degree felony offenses. *Id.* at 3. Plaintiff seeks declaratory and monetary relief. *Id.* at 6.

On April 6, 2023, the undersigned directed Plaintiff to file a more definite statement, so that the Court could properly evaluate the merits of his allegations against Supervisor Valdez. (Doc. No. 8.) On May 5, 2023, the Court received Plaintiff's more definite statement. (Doc. No. 10.)

#### 2. Plaintiff's allegations and equal protection claim.

Plaintiff alleges the following in his original complaint and more definite statement. (Doc. Nos. 1, 10.) On February 13, 1998, following a jury trial, the 232nd District Court of Harris County convicted Plaintiff of aggravated robbery and sentenced him to life imprisonment. (Doc. No. 1, p. 2; Doc. No. 10, p. 1.)[1] Aggravated robbery is a first-degree felony under Texas

---

[1] Public records show that Plaintiff was convicted in Harris County of aggravated robbery for an offense occurring on May 4, 1997 and that he was sentenced to life imprisonment on February 13, 2013. *See* TDCJ Offender Search Website, *available at* https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05296160 (last visited on April 3, 2023). These records further show that Plaintiff was sentenced on April 3, 1998, in Harris County to 15 years' imprisonment each for separate aggravated robbery, aggravated assault, and cocaine possession convictions. *Id.*

law. *See* Tex. Penal Code § 29.03(b). First-degree felonies carry a minimum punishment of five years' imprisonment and a maximum punishment of 99 years' imprisonment. Tex. Penal Code § 12.32(a).

Plaintiff asserts that Supervisor Valdez is responsible for implementing and directing his subordinates to apply what Plaintiff calls the "one-half law" set forth in sections 508.145(d)(1)(A) and 508.145(d)(2) of the Texas Government Code. Plaintiff describes those provisions as requiring inmates "to serve 2 years with good-conduct time or 30 years without good conduct time, whichever is applicable, for parole eligibility." (Doc. No. 1, p. 2) (emphasis deleted). According to Plaintiff, the "one-half law" prohibits an inmate from serving less than two years' imprisonment to become eligible for parole. *Id.* at 3. Plaintiff contends that the State of Texas has provided inmates with a statutory right to earn good-conduct time which, as its name suggests, is awarded to inmates for good conduct "to encourage prison discipline." (Doc. No. 10, p. 2.) When earning good conduct time, inmates receive better job and housing assignments, promotion in "line class,"[2] and extensions of social privileges consistent with proper discipline. *Id.* Inmates subjected to disciplinary convictions for misconduct may lose accrued good-conduct time; this, in turn, can affect the inmate's maximum term in prison. *Id.* Plaintiff alleges that he has accrued over 35 years of good conduct time with no credits affecting his parole eligibility date. *Id.*

Plaintiff cites article 37.07, section 4(a) of the Texas Code of Criminal Procedure, which provides for a jury instruction that inmates convicted of second-degree felony offenses and

---

[2] "Line Class" status ranges from Line Class III to Line Class I and is determined by a prisoner's time earned. *See Offender Orientation Handbook*, https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last accessed May 16, 2023).

sentenced to a term of less than four years will be required to serve at least two years before becoming eligible for parole. (Doc. No. 1, pp. 3-4.) Pursuant to this provision, Plaintiff claims that an inmate sentenced to two years in prison would have to serve a "flat two years," making them ineligible for parole under the "one-half law." *Id.* at 4. Plaintiff contends that this would be an "absurd" result. *Id.*

Although unable to provide names, Plaintiff indicates that he is aware of the existence of inmates who were convicted of second-degree felony offenses and sentenced to two years in prison. (Doc. No. 10, pp. 2-3.) Plaintiff was unable to identify any of these inmates' underlying convictions. *Id.* at 3. Nevertheless, regarding these unidentified inmates, Plaintiff claims that they were designated as parole-eligible by Supervisor Valdez when their "flat time"[3] served in prison plus accrued good-conduct time equaled two years. *Id.*

Plaintiff argues that Supervisor Valdez allegedly applied good conduct time credits for inmates convicted of second-degree felonies and sentenced to two years' imprisonment, but that he refused to apply good conduct time to Plaintiff's sentence. (Doc. No. 1, p. 4.) Supervisor Valdez's actions, Plaintiff contends, violate the Fourteenth Amendment's Equal Protection Clause. (Doc. No. 1, pp. 3-5; Doc. No. 10, p. 3.) Plaintiff also contends that no rational basis exists for Supervisor Valdez "to treat … [P]laintiff different from 2-year sentenced inmates who are similarly situated under the one-half law." *Id.* at 4 (emphasis deleted). Again citing section 4(a) of article 37.07, Plaintiff insists that his equal protection rights have been violated because

---

[3] "A flat-time determinate sentence is a set, certain sentence that offenders sent to prison must serve without parole, which will ensure that similar offenders receive similar sentences for the same crimes." Fogel, U.S. Dep't of Justice: Flat-Time Prison Sentences, https://www.ojp.gov/ncjrs/virtual-library/abstracts/flat-time-prison-sentences-proposal-swift-certain-and-even-handed-0#:~:text=A%20flat%2Dtime%20determinate%20sentence,sentences%20for%20the%20same%20crimes. (last visited May 16, 2023).

no prediction can be made about how prison authorities will apply good conduct time to an inmate serving a term of imprisonment.  (Doc. No. 10, p. 3.)  Plaintiff clarifies in his more definite statement that he seeks compensatory and punitive damages.  *Id.*

### C. Legal standard.

When a prisoner seeks to proceed *in forma pauperis*, the Court shall evaluate the complaint and dismiss it without service of process if the Court finds that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999) (*per curiam*).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Id.* (citations omitted).  Thus, dismissal is inappropriate "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that Program Supervisor Valdez is liable. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. If the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.* Further, as Plaintiff proceeds *pro se*, the Court construes his complaint liberally in his favor. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### D. Discussion.

Plaintiff's claim should be dismissed with prejudice because it is frivolous and fails to state a claim upon which relief may be granted. Plaintiff fails to explain how he (an inmate serving a life sentence) is similarly situated with inmates who are serving two-year sentences, or how any action by any state official violates his equal protection rights.

#### 1. Applicable law.

Section 1983 provides a vehicle for redressing violations of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat*

*superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted). If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny." *Id.* at 353-54. If not, the courts apply "rational basis review," and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose." *Id.* at 354.

"A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class." *Wottlin v. Fleming*, 136 F.3d 1032, 1036 (5th Cir. 1998) (per curiam) (citation omitted). Further, in a "class of one" equal protection claim, a plaintiff alleges differential treatment that is not based on membership in a suspect class or on the infringement of a fundamental right. *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood*, 836 F.3d at 539. Such a claim requires the plaintiff to "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012).

### *2. Analysis: Plaintiff is not similarly situated to inmates convicted of second-degree felonies who are serving two-year sentences.*

Simply put, Plaintiff's equal protection claim fails because he is not similarly situated with any of the (unidentified) inmates who have purportedly been treated more favorably than he. Plaintiff was convicted of a first-degree felony, aggravated robbery, a crime that carries a five-year mandatory minimum sentence. Plaintiff attempts to compare himself to inmates convicted of second-degree felonies; those crimes carry only a two-year mandatory minimum. *See* Tex. Penal Code § 12.33(a). As discussed here, the difference is significant, and is fatal to Plaintiff's equal protection claim.

Plaintiff's underlying aggravated robbery offense occurred on May 4, 1997. According to the relevant "one-half law" in effect at the time of Plaintiff's offense, "a prisoner serving a sentence for one of a number of enumerated offenses, including aggravated robbery, 'is not eligible for release on parole until his actual calendar time served, <u>without consideration of good conduct time</u>, equals one-half of the maximum sentence or 30 calendar years, whichever is less.'" *Kossie v. Davis*, No. H-16-3672, 2017 WL 129023, at *1 (S.D. Tex. Jan. 12, 2017) (Lake, J.) (quoting Tex. Code Crim. Proc. art. 42.18, § 8(b)(3)) (emphasis in original).[4]

As one of the enumerated offenses, aggravated robbery is commonly known as a "3g" offense. *See Brittain v. Director, TDCJ-CID*, Nos. 6:12cv95, 6:12cv114, 6:12cv115, 2012 WL 2401631, at *5 (E.D. Tex. May 16, 2012), *adopted*, 2012 WL 2397443 (E.D. Tex. Jun. 25, 2012) (citing Tex. Code Crim. Proc. art. 42.12 § 3(g)). Additionally, aggravated robbery is "a first-degree felony under Section 29.03, Penal Code (Aggravated Robbery)." *Mendenhall v.*

---

[4] Section 8(b)(3) of Article 42.18 was repealed and recodified in May 1997 as Texas Government Code section 508.145(d). *See Jones v. State*, No. 06-00-00216-CR, 2001 WL 345834, *2 n.1 (Tex.App.—Texarkana Apr. 10, 2001, pet. ref'd) (citing Act of May 8, 1997, 75th Leg., ch. 165, § 12.22, 1997 Tex. Gen. Laws 443).

8 / 11

*Quarterman*, No. 2:03-CV-0440, 2006 WL 3392065, at *3 (N.D. Tex. Nov. 21, 2006) (citing Tex. Code Crim. Proc. art. 42.18 §§ 8(c) and 8(c)(10) (Vernon Ann. 1996)).

Plaintiff's equal protection claim in this case is similar to the claim raised by the plaintiff in *Ogles v. Wingate*, No. A-16-CA-978-SS, 2016 WL 4597640 (W.D. Tex. Sept. 1, 2016). Like Plaintiff, Ogles was convicted of a "3g," or aggravated, offense. *Id.* at *1. Ogles claimed that he was being treated differently than offenders convicted of "non-3g" or non-aggravated offenses because good-time conduct affected the parole eligibility of those offenders but not his own parole eligibility. *Id*. After applying a rational basis test, the court found Ogles' equal protection claim to be frivolous, reasoning that the application of "different parole procedures" to "offenders convicted of 3g or aggravated offenses … is reasonably related to a legitimate penological interest." *Id.* at *2.

The reasoning set forth in *Ogles* applies equally to this case. Here, Plaintiff was convicted of a first-degree felony offense, aggravated robbery – which is also a 3g offense. Plaintiff contends, as did Ogles, that no rational basis exists for Supervisor Valdez to treat him differently than unidentified inmates who were convicted of second-degree felonies and sentenced to two-year sentences by not applying accrued good-conduct time to Plaintiff's sentence. (Doc. No. 1, p. 4.) Plaintiff claims to have received less favorable treatment from Supervisor Valdez and his subordinates, but does not allege that any of the unidentified inmates who supposedly received more favorable treatment were convicted of a similar 3g or any first-degree felony offense. In fact, Plaintiff fails to specify the offense of conviction for any of these supposed inmates.

Plaintiff's allegations, even accepted as true for purposes of screening, fail to show that Supervisor Valdez treated Plaintiff less favorably than any similarly situated comparator in

connection with any decision not to apply good-conduct time to Plaintiff's sentence under the applicable one-half law. Additionally, Plaintiff appears to misconstrue his offense of conviction as being a second-degree felony like those committed by his purported comparators. It was not – Plaintiff's offense is a first-degree felony. The subjection of Plaintiff, who was convicted of a first degree felony and 3g offense and sentenced to life imprisonment, to a different procedure than inmates convicted of lesser, second- degree felony offenses with only two-year sentences is rationally related to a legitimate penological interest. *See Ogles*, 2016 WL 4597640, at *2. Accordingly, Plaintiff's equal protection claim is subject to dismissal as frivolous or for failure to state a claim upon which relief can be granted.

### E. *Conclusion and recommendation.*

Plaintiff's § 1983 equal protection claim against Supervisor Valdez in his individual capacity should be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### F. *Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of this Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on May 16, 2023.

                                                    MITCHEL NEUROCK
                                                    United States Magistrate Judge